CIVIL ACTION NO. 18-12-DLB-CJS

SALLY HALL                                                                                    PLAINTIFF

v.                        MEMORANDUM OPINION AND ORDER

RAG-O-RAMA, LLC                                                          DEFENDANT

*** *** *** ***

Plaintiff Sally Hall brings a number of common-law claims against her former employer, Rag-O-Rama, LLC, including wrongful termination, breach of her employment contract, tortious interference with a business relationship, intentional and/or negligent infliction of emotional distress, and fraudulent inducement. (Doc. # 6). Hall seeks, among other things, reinstatement, lost wages, and compensatory and punitive damages. *Id.* Defendant has moved to dismiss for lack of personal jurisdiction, arguing that none of its contacts with Kentucky fall within one of the enumerated categories in Kentucky's long-arm statute and that the exercise of personal jurisdiction would violate federal due process. (Doc. # 13). In the alternative, Defendant argues that the case should be dismissed for improper venue. *Id.* The matter is fully briefed and ripe for review. (Docs. # 23 and 30). For the reasons set forth herein, Defendant's Motion to Dismiss is **denied**.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Sally Hall is a citizen of Kentucky and resides in Falmouth, Kentucky. (Doc. # 6 ¶ 2). Defendant Rag-O-Rama is an Ohio limited liability company with its principal place of business in Columbus, Ohio. *Id.* ¶ 3. At least one of its corporate

officers resides in Georgia. *Id.* Rag-O-Rama operates resale clothing stores in Ohio and Georgia. (Docs. # 13 at 2 and 23-1 ¶ 6). Rag-O-Rama does not have a physical presence in Kentucky and does not sell merchandise in Kentucky. (Docs. # 13 at 2 and 23-1 ¶ 6).

Plaintiff was a salaried employee of Rag-O-Rama on a part-time basis as a Trainer from August 21, 2015 to June 13, 2016 and thereafter on a full-time basis as Area Manager until her effective termination date of January 10, 2017. (Doc. # 6 ¶ 5). During this entire time period, Hall worked predominantly from her home in Falmouth, Kentucky. (Docs. # 6 ¶ 6 and 23-1 ¶¶ 2, 10). Hall had also previously worked at Rag-O-Rama from 1999-2003, where she "helped to develop its original business model, designed its artwork and logos, helped to develop its original training and employee materials, and operated its store in St. Louis, Missouri." (Doc. # 6 ¶ 8).

Hall claims that Rag-O-Rama's CEO Vance Whitener actively recruited her to work at Rag-O-Rama. (Doc. # 6 ¶¶ 9, 11, 16). Specifically, Plaintiff alleges that Whitener initiated phone calls to her in Kentucky requesting that she rejoin Rag-O-Rama, first on a part-time basis in 2015 and then again on a full-time basis in 2016. (Doc. # 23-1 ¶ 4). Defendant disputes this, claiming instead that Hall asked Whitener to hire her. (Doc. # 13-1 ¶ 8). Plaintiff further claims that she accepted Whitener's offers of employment on the phone. (Doc. # 23-1 ¶ 4). Plaintiff's Trainer and Area Manager positions were memorialized in two employment contracts, which were executed on September 18, 2015 and June 14, 2016, respectively. *See* (Docs. # 13-3 at 3 and 13-5).

The facts and circumstances surrounding Hall's 2016 Area Manager contract are as follows. Whitener sent a signed copy of the contract to Hall at her home in Kentucky, which Hall then signed, scanned, and emailed back to Whitener at his home in Georgia.

(Doc. # 23-1 ¶ 5).  The contract stated that Defendant would pay Plaintiff an annual salary of $51,000 plus quarterly bonuses of $3,600 as well as other benefits.  (Docs. # 6 ¶ 13 and # 13-5).  Plaintiff claims that the contract, which went into effect on June 13, 2016, required Hall to stay employed at Rag-O-Rama for at least one year, after which the employment relationship was "at will."  (Docs. # 6 ¶¶ 12, 15 and # 23-1 ¶ 5).  By contrast, Defendant asserts that the employment contract was "at will" from the beginning.  (Doc. # 13-1 ¶ 9).  As an Area Manager, Hall became one of three executives at Rag-O-Rama, the other two being Whitener and Vice President Jorge Maymo.  (Doc. # 23-2).

Rag-O-Rama hired Hall "with the express understanding and agreement that her work would primarily be performed remotely from her residence in Falmouth, Kentucky." (Doc. # 6 ¶ 17); *see* (Doc. # 13-7 at 5).  In addition, Defendant signed the contract with Hall knowing that she "was a single mother who had custodial responsibilities for a minor child and grandchild that required her to physically reside and be present in Falmouth, Kentucky."  (Doc. # 6 ¶ 21).  Nevertheless, Defendant at certain times communicated to Hall its desire that she spend as much time as possible in Columbus.  *See* (Doc. # 23-5).

As Area Manager for Rag-O-Rama, Hall's primary responsibility was to manage Defendant's Columbus, Ohio store remotely by video feeds and through email and telephone communications from her residence in Falmouth, Kentucky.  (Docs. # 6 ¶ 19 and 23-1 ¶ 8).  Defendant shipped a computer, monitor, and cellular telephone to Hall's home in Falmouth, Kentucky to enable her to manage the Columbus, Ohio store remotely. (Doc. # 6 ¶ 8).  Hall performed the "vast majority" of her work for Rag-O-Rama from her home in Kentucky via the cameras and phone that Defendant provided.  (Doc. # 23-1 ¶ 10).  Plaintiff would also make occasional visits to the Columbus store and sometimes

stayed in Columbus overnight in an apartment provided by Rag-O-Rama. (Doc. # 23-1 ¶ 11). Hall was reimbursed for any travel expenses when visiting the store. *Id.* ¶ 8.

Not long after Hall started working full-time in June 2016, the employment relationship began to sour. Hall's three-month review listed a number of deficiencies in her job performance. *See* (Doc. # 13-7). On January 10, 2017, Rag-O-Rama gave Hall a "performance improvement plan" and "final warning," listing a number of areas in which Hall was not meeting expectations. *See* (Doc. # 13-8). Hall disputed Rag-O-Rama's account of her work performance and refused to sign the personal improvement plan. *See* (Docs. # 6 ¶ 23 and 13-8 at 5). By letter dated January 12, 2017 and addressed to Plaintiff's home address in Kentucky, Rag-O-Rama informed Hall that she was terminated effective January 10, 2017. *See* (Docs. # 6 ¶¶ 26-27 and 23-7).

Plaintiff filed a Complaint on January 10, 2018 (Doc. # 1) and an Amended Complaint on January 24, 2018. (Doc. # 6). In her Amended Complaint, Plaintiff brings claims for wrongful discharge, breach of contract, breach of fiduciary duty, breach of warranty, fraudulent inducement, tortious interference with a contractual relationship, and negligent and/or intentional infliction of emotional distress. *Id.* On March 21, 2018, Defendant filed a motion to dismiss for lack of personal jurisdiction and improper venue. (Doc. # 13). On May 17, 2018, Plaintiff filed a Response accompanied by an affidavit. (Docs. # 23 and 23-1). Defendant filed a Reply on June 11, 2018. (Doc. # 30).

## II.     ANALYSIS

### A.     Standard of Review

When a defendant brings a Rule 12(b)(2) motion to dismiss, the burden is on the plaintiff to establish personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458

(6th Cir. 1991). The plaintiff cannot meet her burden by simply pointing to the pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* A court views the pleadings and affidavits in the light most favorable to the plaintiff and "does not weigh the controverting assertions of the party seeking dismissal." *Id.* at 1459. When the court has not conducted an evidentiary hearing,[3] a plaintiff need only make a prima facie showing of personal jurisdiction, *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002), making this burden "relatively slight," *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008). Surviving a Rule 12(b)(2) motion does not relieve a plaintiff of her burden to prove jurisdiction by a preponderance of the evidence, should the defendant later raise the issue. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

**B.    Hall has made a prima facie case of personal jurisdiction.**

In diversity actions such as this one, "federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements." *Air Prods. & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Therefore, the exercise of personal jurisdiction must be proper both under Kentucky's long-arm statute and the federal Due Process Clause. *See id.* The Kentucky Supreme Court has held that the state's long-arm statute (Ky. Rev. Stat. § 454.210) does not reach the outer limits of the Due Process Clause. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).

---

[3]    Neither party has requested an evidentiary hearing.

Therefore, the Court must determine if personal jurisdiction is proper under Kentucky's long-arm statute and then conduct the federal due process analysis.

### 1. *Kentucky's long-arm statute*

Kentucky's long-arm statute lists nine enumerated categories of conduct that form the basis for personal jurisdiction. *See* Ky. Rev. Stat. § 454.210(2)(a). The long-arm statute also contains a separate requirement that a plaintiff's claim "arise from" the enumerated conduct. *See id.* § 454.210(2)(b); *Caesars*, 336 S.W.3d at 58-59. Plaintiff relies on the statute's first enumerated category, which permits a Kentucky court to exercise personal jurisdiction over a defendant who has "[t]ransact[ed] any business in this Commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(1); *see* (Doc. # 23 at 4).

### i. Defendant has transacted business in Kentucky.

Since the decision in *Caesars*, which held that Kentucky's long-arm statute is not coterminous with due process, "there is little [state] case law interpreting the meaning of 'transacting business' as used in [Ky. Rev. Stat. §] 454.210(2) . . . ." *Gentry v. Mead*, No. 16-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016). Nevertheless, numerous federal courts in Kentucky have recently construed Ky. Rev. Stat. § 454.210(2)(a)(1) and have taken several different approaches. For instance, some courts have looked to the plain meaning of "transacting business." "Black's Law Dictionary defines 'transact' as '[t]o carry on or conduct (negotiations, business, etc.) to a conclusion.'" *Childress Cattle, LLC v. Cain*, No. 3:17-cv-388-JHM, 2017 WL 3446182, at *3 (W.D. Ky. Aug. 10, 2017) (quoting *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Georgia*, No. CV 15-161-DLB-HAI, 2017 WL 3122661, at *14 (E.D. Ky. July 21, 2017)).

Other courts have asked whether there has been "a course of direct, affirmative actions within a forum that result in or solicit a business transaction." *Gentry*, 2016 WL 6871252, at *3 (quoting *Modern Holdings, LLC v. Corning, Inc.*, No. 13-cv-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31, 2015)).  Under this approach, an "isolated contract[]" with a Kentucky resident does not alone constitute transacting business.  *Id.* (quoting *Modern Holdings*, 2015 WL 1481443, at *6).  Thus, a non-resident defendant who enters into a one-time lending agreement with a Kentucky resident has not transacted business in Kentucky.  *Id.*  Similarly, the Kentucky long-arm statute does not extend to a Tennessee defendant that communicated several times with a Kentucky plaintiff by telephone and email but that provided services for the plaintiff exclusively in Tennessee.  *See Envirometric Process Controls, Inc. v. Adman Elec., Inc.*, No. 3:12-cv-62-S, 2012 WL 4023789, at *2-3 (W.D. Ky. Sept. 12, 2012).  In contrast, a non-resident defendant that establishes an office in Kentucky, has an employee who conducts business out of that office, and pays that employee for his work in Kentucky is subject to long-arm jurisdiction in Kentucky.  *Gentry*, 2016 WL 6871252, at *3.

Finally, in determining the meaning of Ky. Rev. Stat. § 454.210(2)(a)(1), at least two district courts in Kentucky have relied on the Sixth Circuit's interpretation of Michigan's long-arm statute, which contains the identical phrase "transacting any business."  *See, e.g.*, *Power Invs., LLC v. Becker*, No. 5:18-466-DCR, 2018 WL 4390722, at *2-3 (E.D. Ky. Sept. 14, 2018); *Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 969 (E.D. Ky. 2017) (Bertelsman, J.).  The Sixth Circuit has held that the "use of the word 'any' . . . establishes that *even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction.*"  *Eat More Wings*, 282 F.

Supp. 3d at 969 (alteration and emphasis in original) (quoting *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504-05 (6th Cir. 2014)). Accordingly, in *Becker*, the court found that defendants transacted business within the meaning of Kentucky's long-arm statute "because they called, texted, and sent e-mails to a Kentucky resident and asked him to wire money, which he did from Kentucky." 2018 WL 4390722, at 3. Likewise, the court in *Eat More Wings* found the "transacting business" prong satisfied when defendant had sent emails to a Kentucky resident, knowing he was in Kentucky, and asked him to "send samples and instructions for his products, which [plaintiff] fulfilled from Kentucky." 282 F. Supp. 3d at 970.

The Court finds that, under any of the three approaches outlined above, Rag-O-Rama has transacted business in Kentucky. Plaintiff has put forth facts showing that Defendant purposefully reached out to Plaintiff in Kentucky in order to begin a substantial and long-term business relationship. Specifically, Defendant contacted Plaintiff in Kentucky to ask her to work for Rag-O-Rama and sent the employment contract to Plaintiff in Kentucky, where Plaintiff signed it. (Doc. # 23-1 ¶¶ 4-5). Defendant did all this knowing that Plaintiff would be working primarily from her home in Kentucky. *Id.* ¶ 7. Throughout the course of the employment relationship, which lasted approximately one and a half years, Defendant frequently contacted Plaintiff in Kentucky by phone, email, and regular mail. *See, e.g., id.* ¶¶ 5, 8, 13. In addition, Defendant sent a computer, monitor, and cellular phone to Hall's residence in Kentucky to enable her to work remotely from her home. *Id.* ¶ 8.

Therefore, by recruiting and hiring Plaintiff in Kentucky and maintaining an active business relationship with Plaintiff in Kentucky, Defendant's conduct fits within the plain

meaning of "transacting" business in Kentucky, which is defined as "carry[ing] on [and] conduct[ing] negotiations, business, etc. to a conclusion." *Childress Cattle*, 2017 WL 3446182, at *3 (internal parentheses omitted) (quoting Black's Law Dictionary). In addition, Defendant has exhibited the "course of direct, affirmative actions within a forum that result[ed] in . . . a business transaction." *Gentry*, 2016 WL 6871252, at *3. Lastly, Defendant's acts of calling, emailing, and mailing Plaintiff in Kentucky as they related to an ongoing contractual relationship are plainly sufficient under the Sixth Circuit's "slightest transaction" test. *See Eat More Wings*, 282 F. Supp. 3d at 969.

Defendant argues that the Court has no personal jurisdiction under the "transacting any business" category of Kentucky's long-arm statute because Rag-O-Rama "derives no revenue from Kentucky and everything plaintiff did for Rag-O-Rama was directed at operations in Ohio and Georgia." (Doc. # 30 at 4). Defendant defines "business" too narrowly, however. While Defendant does not sell its products in Kentucky, it can hardly be denied that the recruitment and hire of a Kentucky executive-level employee to work almost exclusively in Kentucky qualifies as "transacting any business in this commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(1); *see Gentry*, 2016 WL 6871252, at *3 ("Actions such as leasing office space, hiring an employee, and executing contracts fit squarely within the ordinary meaning of transacting business.").

Indeed, Kentucky caselaw supports the conclusion that employing workers or having agents in Kentucky constitutes "transacting business" under the long-arm statute. *See, e.g.*, *Cooper v. Nair*, No. 2013-CA-001746-MR, 2015 WL 128549, at *4 (Ky. Ct. App. Jan. 9, 2015) (declining to exercise long-arm jurisdiction because defendant "has no agents or employees working on its behalf in Kentucky"); *Davis v. Wilson*, 619 S.W.2d

709, 710 (Ky. Ct. App. 1980) (holding that a nonresident defendant's "hiring and working [plaintiff] in Kentucky were transactions of business in Kentucky"); *Tube Turns Div. of Chemetron Corp. v. Patterson Co.*, 562 S.W.2d 99, 99-100 (Ky. Ct. App. 1978) (noting that defendant "has no employees or agents in Kentucky" in finding that the defendant had not transacted any business in Kentucky within the meaning of the long-arm statute). Thus, the Court finds that Defendant has transacted business in Kentucky.

### ii.   Plaintiff has met the "arising from" requirement.

Hall's claims also "aris[e] from" Rag-O-Rama transacting business in Kentucky as required under the Kentucky long-arm statute.  Ky. Rev. Stat. § 454.210(2)(b).  The "arising from" requirement is satisfied "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction."  *Caesars*, 336 S.W.3d at 59.  Here, the alleged breach of contract and alleged torts all stem from Defendant's employment relationship with Plaintiff that establishes personal jurisdiction under Ky. Rev. Stat. § 454.210(2)(a)(1).  Thus, the Court finds the Kentucky long-arm statute satisfied and now turns to whether personal jurisdiction is permitted under federal due process.

### 2.    *Due process*

To establish personal jurisdiction over an out-of-state defendant, the plaintiff must establish "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Air Prods.*, 503 F.3d at 549 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or

general." *Id.* at 549-50. Because the Court finds that it has specific personal jurisdiction over Defendant, it does not consider the issue of general jurisdiction. *See id.* at 550.

A specific jurisdiction analysis involves a three-part test established by the Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968). First, a defendant must have purposefully availed itself of the privilege of acting in the forum state or causing a consequence there. *Air Prods.*, 503 F.3d at 550. Second, the cause of action must arise from the defendant's activities in the forum state. *Id.* Finally, the defendant's acts or the consequences caused by those acts must have a substantial enough connection with the forum state to make the exercise of jurisdiction over Defendant reasonable. *Id.* The first prong—purposeful availment—is the "sine qua non for in personam jurisdiction" and is therefore "arguably the most important." *Id.* (quoting *Mohasco*, 401 F.2d at 381-82).

### i.    Purposeful availment

The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation marks and citation omitted). Purposeful availment is present when a defendant creates a "substantial connection" with the forum state such that he "should reasonably anticipate being haled into court there." *Id.* at 474-75 (citations omitted). "With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions for the consequences of their activities.'" *Air Prods.*, 503 F.3d at 551 (quoting *Burger King*, 471 U.S. at 473). A defendant need not be

physically present in a state in which business is conducted "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." *Burger King*, 471 U.S. at 476 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Although contracting with an out-of-state party alone does not automatically establish minimum contacts, "the presence of certain factors in addition to the contract will be found to constitute purposeful availment." *Air Prods.*, 503 F.3d at 551 (citing *Burger King*, 471 U.S. at 478-79). These factors include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

In addition to these guiding principles set forth by the Supreme Court, two themes emerge from Sixth Circuit caselaw. First, a one-time transaction with a plaintiff in the forum state is unlikely to be sufficient under the Due Process Clause. However, a defendant who maintains "a continuing business relationship" with a plaintiff in the forum state has purposefully availed itself of the forum's laws. *Air Prods.*, 503 F.3d at 551. To illustrate, the Sixth Circuit in *Cole v. Mileti*, 133 F.3d 433, 435 (6th Cir. 1998) found purposeful availment where the defendant had negotiated a surety agreement with the plaintiff in Ohio and maintained an ongoing business relationship with the Ohio plaintiff for over ten years. Similarly, in *Air Products*, a defendant who had purchased goods from an Ohio corporation for almost nine years was found to have purposefully availed itself of the privilege of causing a consequence in Ohio. 503 F.3d at 551.

By contrast, the Sixth Circuit held that a California defendant that negotiated an employment contract with an Ohio plaintiff and exchanged emails, phone calls, and faxes with the plaintiff in Ohio did not have minimum contacts with Ohio because the plaintiff

relocated to California soon after the contract was signed. *See Condon v. Flying Puck, LLC*, 35 F. App'x 173, 174 (6th Cir. 2002). In a similar case, the Sixth Circuit affirmed a dismissal for lack of personal jurisdiction despite the defendant actively negotiating an employment contract with the plaintiff in Ohio because plaintiff worked remotely in Ohio for only one month before leaving to work at the defendant's headquarters in Florida. *See Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 980, 982 (6th Cir. 1992); *see also Houseman v. DPI Food Prods.*, No. 2005-66-WOB, 2005 WL 2656123, at *6 (E.D. Ky. Oct. 18, 2005) (distinguishing *Cole* because, although the employment contract was negotiated and signed in Kentucky, the parties "contemplated plaintiff's relocation to Colorado and his employment there").

Second, the Sixth Circuit has put great emphasis on a defendant's affirmative act of reaching out to a plaintiff whom he knows to be in the forum state. *See Air Prods.*, 503 F.3d at 551; *Cole*, 133 F.3d at 436; *In-Flight Devices Corp. v. VanDusen Air, Inc.*, 466 F.2d 220, 226-27 (6th Cir. 1972). For instance, in *Air Products*, the defendant initiated contact with the plaintiff numerous times and those contacts "were made for purposes of placing purchase orders and, therefore, continuing the parties' business relationship." 503 F.3d at 552. Likewise in *In-Flight Devices Corp.*, the court found it significant that the defendant entered into contract negotiations "with a firm which it necessarily knew was based in [the forum state] and had its production facilities located within that State." 466 F.2d at 227. Finally, in *Cole*, the Sixth Circuit declared that if "a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to [a forum-state] resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in [the forum]." 133 F.3d at 436.

Conversely, "[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." *Lak, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). The Sixth Circuit in *Kroger Co. v. Malease Foods Corp.* distinguished *Cole v. Mileti* on this very basis, noting that "*Cole* is inapposite to our case, because [defendant] initiated no contacts with Ohio." 437 F.3d 506, 513 n.8 (6th Cir. 2006). In perhaps the most striking example of this rule, the Sixth Circuit held that there was no purposeful availment despite the fact that defendant (1) entered into a contract with the Ohio plaintiff, (2) corresponded with plaintiff in Ohio via telephone, fax, and mail, (3) twice visited with plaintiff in Ohio, and (4) agreed to be bound by Ohio law in the contract. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 720 (6th Cir. 2000). The *Calphalon* court observed that defendant's contacts with plaintiff in Ohio "occurred solely because [plaintiff] chose to be headquartered in Ohio." *Id.* at 723.

The Sixth Circuit has since carefully distinguished *Calphalon*, observing that "there is no mention in *Calphalon* that [defendant] 'reached out' to Ohio to negotiate with [plaintiff]." *Tharo Sys. v. cab Produkttechnik GmbH & Co. KG*, 196 F. App'x 366, 371 (6th Cir. 2006). Unlike in *Calphalon*, the court in *Tharo Systems* found that the defendant's contacts with the forum state "were not solely a result of [Plaintiff's] choice of location because [defendant] *affirmatively reached out to [plaintiff] in Ohio to negotiate the [Letter of Understanding] in an effort to strengthen the parties' mutual business relationship.*" *Tharo Sys.*, 196 F. App'x at 371 (emphasis added) (internal quotation marks omitted). District courts in the Sixth Circuit have also distinguished *Calphalon* on this basis. *See, e.g.*, *Knowledge Based Sols., Inc. v. Van Dijk*, No. 16-cv-13041, 2017 WL 3913129, at *7

(E.D. Mich. Sept. 7, 2017); *Alloy Bellows & Precision Welding, Inc. v. Cole*, No. 1:15-cv-494, 2015 WL 6964579, at *5 (N.D. Ohio Nov. 10, 2015).

In the case at bar, the Court finds the purposeful availment prong satisfied. First, Rag-O-Rama's employment relationship with Hall was "not a one-shot affair." *Mohasco*, 401 F.2d at 385. Rather, Hall's employment with Rag-O-Rama spanned eighteen months, *see* (Doc. # 13 at 2), and the parties intended to begin a long-term business relationship when signing the contract. *See* (Docs. # 13-5 and 23-1 ¶¶ 5, 16). Unlike in *Condon* and *Conti*, *supra* at 12-13, Hall continued living in Kentucky throughout the duration of her employment with Rag-O-Rama and performed the "vast majority" of her work for Rag-O-Rama while in Kentucky. (Doc. # 23-1 ¶ 10). Furthermore, over the course of these eighteen months, Rag-O-Rama maintained a close business relationship with Hall, contacting Hall in Kentucky on numerous occasions through email, telephone, and ordinary mail. *See Air Prods.*, 503 F.3d at 548; (Docs. # 13-2 at 3; 13-8 at 1; 23-1 ¶¶ 4-5, 8, 10, 13; 23-4; 23-5; and 23-7).

Second, Rag-O-Rama's contacts with Kentucky were not solely the result of Plaintiff's unilateral conduct. Hall has alleged that Rag-O-Rama CEO Whitener aggressively sought out Hall for high-level employment at Rag-O-Rama.[1] (Doc. # 23-1 ¶¶ 4-5). By doing so, Rag-O-Rama "affirmatively reached out to [Hall] in [Kentucky] to negotiate the [employment contract] in an effort to strengthen the parties' mutual business relationship." *Tharo Sys.*, 196 F. App'x at 371. In addition, by calling Hall to discuss the

---

[1] Although Defendant disputes this version of events, *see* (Doc. # 13-1 ¶ 8), "[w]here, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion," the court may "not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459). Therefore, the Court must accept as true that Rag-O-Rama actively recruited Hall to become an executive-level employee.

employment contract, which Hall then signed in Kentucky, defendant "transact[ed] business by negotiating and executing a contract via telephone calls and letters to [a Kentucky] resident" and "has purposefully availed [itself] of the forum by creating a continuing obligation in [Kentucky]." *Cole*, 133 F.3d at 436; *see* (Doc. # 23-1 ¶¶ 4-5).

While Defendant does not sell merchandise in Kentucky and employed Hall to manage stores outside of Kentucky, Defendant initiated contract negotiations with Hall, whom Defendant "necessarily knew was based in [Kentucky] . . . ." *In-Flight Devices Corp.*, 466 F.2d at 227; *see* (Doc. # 23-1 ¶ 4). Not only was Defendant knowledgeable of Plaintiff's desire to work from Kentucky, but her doing so was specifically bargained for in the negotiation of the employment contract. *See* (Docs. # 6 ¶ 17 and 13-1 ¶ 9). Moreover, it was Defendant's deliberate act of sending computer monitoring equipment and a cellphone to Plaintiff's home that enabled Plaintiff to manage the Columbus, Ohio store remotely from her Kentucky residence. (Doc. # 23-1 ¶ 8). Given these facts, Defendants contacts with Kentucky can hardly be characterized as "random, fortuitous, or attenuated." *Lak*, 885 F.2d at 1300 (quoting *Burger King*, 471 U.S. at 475).

The Court's conclusion in this case aligns with other district court decisions in the Sixth Circuit, which have held that "[a]n employment contract performed by the plaintiff in the forum state with the knowledge and acquiescence of the defendant provides sufficient minimum contacts to make the defendant subject to personal jurisdiction in the forum state." *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461 at *3 (W.D. Tenn. May 9, 2011) (internal quotation marks omitted); *accord Paine v. Intrepid, U.S.A., Inc.*, No. 3:14-cv-02005, 2015 U.S. Dist. LEXIS 100591, at *2-3 (M.D. Tenn. July 30, 2015); *Goff v. Brook-Hollow Capital, LLC*, No. 3:12-0713, 2013 WL 6051035, at *5 (M.D. Tenn. Nov.

15, 2013); *Hige v. Turbonetics Holdings, Inc.*, 662 F. Supp. 2d 821, 830-31 (E.D. Mich. 2009).

These courts considered factors such as whether (1) the defendant solicited the employment of the plaintiff in the forum state; (2) the plaintiff worked predominantly from within the forum state; (3) the plaintiff was a high-level employee in the defendant's business; (4) the plaintiff signed the employment contract in the forum state; (5) the defendant had knowledge of, and "facilitated," the plaintiff's remote employment; and (6) the work the plaintiff performed in the forum state advanced the defendant's business interests in the forum state. *Paine*, 2015 U.S. Dist. LEXIS 100591, at *2-3; *Goff*, 2013 WL 6051035, at *5; *McKee*, 2011 WL 1770461, at *3; *Hige*, 662 F. Supp. 2d at 830-32.

Here, all of the above factors, with the exception of the last one, point in favor of exercising jurisdiction. Rag-O-Rama recruited Hall while she was living in Kentucky to become an executive-level employee. (Docs. # 23-1 ¶¶ 4-5 and 23-2). Plaintiff signed the employment contract in Kentucky and worked predominantly from her home in Falmouth, Kentucky. (Doc. # 23-1 ¶¶ 5, 10). Hall worked remotely from Kentucky with Rag-O-Rama's blessing and with equipment that Rag-O-Rama provided for that very purpose. (Doc. # 23-1 ¶¶ 7-8).

Defendant argues that Hall's home office in Kentucky "existed for her convenience, not Rag-O-Rama's" (Doc. # 30 at 5) and cites a number of cases (all of which are non-binding) for the proposition that "[a]n agent's decision to work from home in the forum state generally does not bind an entity to personal jurisdiction in that state where the purpose of the arrangement is merely for the agent's personal convenience." (Doc. # 30 at 6) (quoting *Listug v. Molina Info. Sys., LLC*, No. 14-386 (DWF/SER), 2014 WL 3887939,

at *3 (D. Minn. Aug. 8, 2014)). Yet, as discussed, these cases are contrary to the prevailing view among district courts in the Sixth Circuit. *See supra* at 16-17. In addition, a substantial number of district courts outside of the Sixth Circuit have chosen to exercise jurisdiction over defendants who employ individuals remotely in other states. *See, e.g.*, *Williams v. Preeminent Protective Servs.*, 81 F. Supp. 3d 265, 268 (E.D.N.Y. 2015); *Turner v. Advanced Navigation & Positioning Corp.*, No. 8:08-cv-1216-T-27-MSS, 2008 WL 4360989, at *5 (M.D. Fla. Sept. 24, 2008); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 359-60 (S.D.N.Y. 2007).

In *Williams v. Preeminent Protective Services*,[2] a case with facts closely resembling this one, the plaintiff, who lived in New York, was hired by a Maryland corporation that did no business in New York. 81 F. Supp. 3d 265, 268 (E.D.N.Y. 2015). The plaintiff had a home office in New York and, like Hall, performed "virtually all of her work . . . from her home in [the forum state]." *Id.* at 269 (internal quotation marks and brackets omitted); (Doc. # 23-1 ¶ 10). Also like Hall, the plaintiff in *Williams* "was expected to be available to defendants at all times, and was provided with a company-owned laptop [and] cellphone . . . for that purpose." *Williams*, 81 F. Supp. 3d at 269; (Doc. # 23-1 ¶¶ 8, 10). The *Williams* court expressly rejected the defendant's argument that "an employee's decision to work from home in the forum state does not bind an entity to personal jurisdiction in that state."[3] 81 F. Supp. 3d at 271. The court held instead that "[p]laintiff's

---

[2]     Defendant cites *Williams* in its Reply for the proposition that "telecommuting supports personal jurisdiction only when the telecommuter solicited business in the foreign [sic] state or represented the employer to third parties from the foreign [sic] state." (Doc. # 30 at 7). There is no indication that the plaintiff in *Williams* did either of these things from New York. In fact, the case stands for the opposite of what Rag-O-Rama says it does, in that the defendant need not seek a "unique benefit" from the state in which plaintiff resides as long as it "hired plaintiff . . . while she lived in [the forum state]." *Williams*, 81 F. Supp. 3d at 272.

[3]     The case that the *Williams* defendants relied on for this proposition—*Lucachick v. NDS Americas, Inc.*, 169 F. Supp. 2d 1103, 1107 (D. Minn. 2001)—is also cited by Rag-O-Rama. (Doc. # 30 at 6).

decision to work from home . . . was not unilateral," as "[d]efendants hired her knowing that she would live and work in [the forum state], and continued their communications with plaintiff [there] for a sustained period of time." *Id.*

In summary, as Defendant recruited Plaintiff in Kentucky, sent a signed contract to Plaintiff in Kentucky, and engaged in a close working relationship with Plaintiff in Kentucky for a substantial period of time, Defendant has "reach[ed] out beyond one state and create[d] [a] continuing relationship[] and obligations with [a] citizen[] of another state." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Thus, the purposeful availment prong of the *Mohasco* test is satisfied.

### ii.    Arising out of

The "arising out of" prong requires only "that the cause of action . . . have a substantial connection with the defendant's in-state activities." *Mohasco*, 401 F.2d at 384 n.27. In other words, "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Id.* at n.29. The "arising out of" standard "is a lenient one." *Hige*, 662 F. Supp. 2d at 832 (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). All but three of Plaintiff's claims (Doc. # 6 ¶¶ 36-39, 43-48) stem from the employment agreement with Defendant that was (1) negotiated while Plaintiff was in Kentucky, (2) signed by Plaintiff in Kentucky, and (3) predominantly carried out in Kentucky. *See* (Doc. # 23-1 ¶¶ 4-5, 10). Thus, the "arising out of" requirement is met regarding these claims. Plaintiff's other claims, including detrimental reliance, fraudulent inducement, and tortious interference (Doc. # 6 ¶¶ 40-42), also arise out of Defendant's contacts with Kentucky because they relate to various verbal statements and assurances made to Hall while she

was in Kentucky as part of the negotiation process prior to Hall signing the employment contract. *See* (Doc. # 23-1 ¶¶ 4-5).

### iii. Reasonableness

The third requirement under *Mohasco* is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco*, 401 F.2d at 381. "An inference arises that the third factor is satisfied if the first two [*Mohasco*] requirements are met." *Bird*, 289 F.3d at 875. The considerations relevant to the reasonableness inquiry include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (citations omitted).

Here, the burden on Rag-O-Rama is minimal. Its principal place of business and essential witnesses are located in Columbus, Ohio, which, the Court takes judicial notice, is approximately one hundred miles from the Eastern District of Kentucky courthouse in Covington. *See* Fed. R. Evid. 201; (Doc. # 13 at 1). Kentucky has a strong interest in adjudicating the controversy, as Rag-O-Rama has contracted with a Kentucky resident. *See Mohasco*, 401 F.2d at 385 ("[W]hen the contract is with a resident of [the forum state], the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted."). Plaintiff Hall has an interest in her choice of forum. *See Hige*, 662 F. Supp. 2d at 833. Ohio also has an interest in adjudicating this suit, as it involves some of its citizens. Yet, "this interest does not override the other factors suggesting that personal jurisdiction in [Kentucky] is reasonable." *Bird*, 289 F.3d at 876. Therefore, this is not the "unusual case" where the exercise of personal jurisdiction would be

unreasonable. *Theunissen*, 935 F.2d 1461. As Hall has put forth facts satisfying both the Kentucky long-arm statute as well as the *Mohasco* test, personal jurisdiction over Rag-O-Rama is proper and Defendant's Motion to Dismiss is **denied**.

### C.     Venue is proper in this district.

The Eastern District of Kentucky is the proper venue in this case. Under the general venue statute, venue is appropriate in a district where "any defendant resides." 28 U.S.C. § 1391(b)(1). If a defendant is an "entity," it is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2); *see Eagle Mining, LLC v. Elkland Holdings, LLC*, No. 14-105-ART, 2014 WL 3508017, at *3 (E.D. Ky. July 14, 2014) (Thapar, J.). As a limited liability company, *see* (Doc. # 13 at 1), Rag-O-Rama is considered an "entity" for purposes of § 1391(c)(2). *See Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC*, No. 3:16-cv-63, 2016 WL 7209553, at *3 (E.D. Tenn. Dec. 12, 2016). Accordingly, since Rag-O-Rama is subject to personal jurisdiction in Kentucky based on its contacts with Falmouth, Kentucky in the Eastern District of Kentucky,[4] venue is proper in this district. *See* 28 U.S.C. § 1391(b)(1) and (c)(2).

### D.     The Court will not transfer this case to the Southern District of Ohio.

Defendant states several times in its briefing that the proper venue in this case is the Southern District of Ohio rather than the Eastern District of Kentucky. *See* (Docs. # 13 at 1 and 30 at 1, 9). Yet, Defendant's Motion is unmistakably styled as a motion to dismiss for improper venue and not as a motion to transfer. *See* (Doc. # 13 at 1, 9) (citing Federal Rule of Civil Procedure 12(b)(3) and asserting that "because venue is improper,

---

[4]     The Court takes judicial notice of the fact that Falmouth, in Pendleton County Kentucky sits in the Eastern District of Kentucky. *See* Fed. R. Evid. 201.

this cause must be dismissed").  Furthermore, nowhere in Defendant's Motion does it request a transfer, and as such, Defendant has not "state[d] the relief sought" as required under Federal Rule of Civil Procedure 7(b)(1)(C).  Nor does Defendant suggest a statute under which a transfer to the Southern District of Ohio would occur.  Rag-O-Rama does mention in its Reply that "the Court must either dismiss the case or *transfer* it to the Southern District of Ohio ...."  (Doc. # 30 at 1) (emphasis added).  However, were the Court to construe Defendant's Motion as a motion to transfer based on this statement in its Reply, it would frustrate the purpose of Rule 7 "to provide notice to the court and the opposing party."  *Elustra v. Mineo*, 595 F.3d 699, 708 (7th Cir. 2010).  Therefore, the Court declines to consider whether transfer would be appropriate in this case.

## III.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

(1)     Defendants' Motion to Dismiss (Doc. # 13) is **DENIED**;

(2)     the Defendant shall file its answer **within twenty (20) days** of this Memorandum Opinion and Order;

(3)     to the extent not already completed, the parties shall conduct their Rule 26 conference and file their Rule 26(f) Report of Planning Meeting **not later than February 8, 2019**.

This 8th day of January, 2019.



Signed By:
*David L. Bunning*
United States District Judge